Good afternoon, your honors. My name is James Kilborn, representing the United States. I would like to reserve five minutes for rebuttal. The district court entered a series of pretrial orders in this case, excluding the government from presenting certain evidence. First of all, it required the government to present a witness list a year in advance of the then-scheduled trial date. It then entered an order saying that the government could not bring any witnesses that were not included on that list. Did you try? Did you ask for a relief? Did you say, we have this list of witnesses and we'd like to amend the witness list? No, we did not do that. But in our view, your honor, we were not required to go that far in order to have an appeal under 18 U.S.C.A. Well, you can have an appeal, too, but you can also lose. If you want to show abuse of discretion, of course, you have to show that this is abuse of discretion. One way to show it is to say, well, he will present the reasons why these witnesses were not available a year before. These were people that were found later, the exigency, and so on. You didn't do any of that. What you want is to find an abuse of discretion simply because an order was entered a year before trial. There's nothing else. Well, the district court announced its intent not to allow any witnesses that were not on the witness list that we had provided. Counsel, I had thought that your appeal was not about the one year. It was about being required to produce a witness list at all. It's about both, your honor. If you had moved the district court for leave to produce a witness list closer to trial, it seems like it would be a different case. Well, this judge was intent and resolute on his... You're talking about Judge Malloy? Yes. Oh. You know Judge Malloy as well? Yes. We know him well. One would hope so. He's a pussycat. He's well described that way. He had a tough job. You know, how much time was allowed for discovery? Well, in this case... This was a very complicated, contentious case. Isn't that right? This is a large case. It is not that complicated. There are potentially a lot... It's not that complicated. What's the problem? 253 witnesses is not enough? I thought that's what Judge Malloy was reacting to. Didn't he say you kept making it more complicated than it needed to be? No. What Judge Malloy did was we, in our notice prior to the pretrial conference, gave an estimate as to how many witnesses we thought we would call and what the length of trial was. We thought we would be calling 60 to 80 witnesses. When Judge Malloy wanted a firm witness list, we wanted to make sure that we had all potential witnesses that we might need to call. But we specifically reserved both in the March notice that we filed prior to the original status conference, pretrial status conference, we said, this is how many we intend to call but we reserve our right to continue to investigate the case. You can only reserve a right if you have it. Now, of course, you have the right to continue to investigate whether you express a reservation or not. But as for your right to call witnesses that aren't on the witness list, you can't reserve the right unless you have it. And as far as whether you have it or not, it seems to me that's just a matter of construing the language of Rule 16. That's right. And this Court specifically held in the Hicks case. Well, we're on Bonk, so it doesn't matter. We're not bound by Hicks. We're deciding whether to stick with it. I was on the Hicks case and I just had a very narrower view of that case. In other words, don't step too hard on the Hicks case. It might not support your weight. What we're doing is deciding whether to maintain Hicks or overrule Hicks. Well, let me turn to Hicks then. Let me tell you what's on my mind so you can really address what I'm thinking. My thinking is this is just a god-awful trial from the point of view of a district judge. A good trial, a good orderly trial that the jury can understand, takes anywhere from two days to maybe two or three weeks. Beyond that, they get a little crazy. You try to impose some order. With this complex a case, you'd really like both sides to disclose their witnesses a year in advance so that they can do all their investigation. And then it's likely that a month or so before trial, both sides are going to want to change things around some and supplement and change their plans based on all that happened in the year. But in order to roll things along in an orderly way with a trial of this extraordinary complexity, I don't see how else you could do it. What am I getting wrong here? The government acknowledges that this is a large trial, that it would have a large number of witnesses, that it would have both lay witnesses and expert witnesses. It wasn't trying to stonewall here. In the March 2005 notice that we presented to the court before the pretrial status conference, we laid out a whole schedule of when we would provide discovery that was very significant discovery to the defendants, turning over millions of pages of documents. When I was a district judge, I always thought I got to lay out the schedule. Well, according to Rule 16 and the whole structure of Rule 16, that is predicated upon discovery in the first instance being a matter of agreement between the government and the defense. And if the government and defense cannot agree upon what a schedule should be, only then do they go to the district court and then can the district court step in. That's not how this came down. This came down with Judge Malloy in the first instance laying a schedule down. Yes, but what he did was lay out a schedule and then he said, and I'm going to set the trial at a particular date and I want by a date certain a finalized list of witnesses. And the U.S. attorney in charge of the case did not object to that. It was only when the list was filed that a reservation was made of the right to leave it open. I don't believe that's quite correct, Your Honor, because in the March 2005 pretrial notice that we submitted where we laid out what we... That was pretrial. His order that follows says explicitly it's a finalized list of witnesses. There was no contemporaneous objection at that point. It's only when, as I recall, I may be wrong, but as I recall then a reservation of right was reasserted at the time he filed the list in the summertime. But there was no objection to the requirement that it be a finalized list. I believe you're correct that there was not an objection at the status conference itself, although there was colloquy among the parties about that. So there was not only no effort to reconsider or amend or show cause, there was no objection at all. Well, we reserved the right to supplement our list both in March of 2005 when we provided our pretrial notice and when we submitted the witness list in September of 2005. And I think it's very instructive here as to how the district court viewed this because when this matter... Did you hear Judge Hawkins' question? I'm sorry? Did you hear the question Judge Hawkins asked you? I thought I did. I thought maybe you must have not heard it because I don't think you answered the question he asked. You didn't raise an objection, right? I said yes. You didn't raise an objection at the time? At the status conference in March 2005, there was not an express objection by the government. I mean, what do you mean by express objection? Did you sort of hold up a sign saying, so, silent objection? Did you do it in pantomime? What does not express objection mean? I only know objection and not objection. Objection is usually done. I remember from my days of watching Perry Mason, somebody stands up in the courtroom and says, I object, Your Honor. Okay, those are the words used in American courtrooms, right? You know those words, yes? Yes. Okay, was anything like that done? I object? No, we did not say... Was there a piece of paper file saying, we object? We did not say that at the March 2005... So when you say, give the answer, there was no express objection, what are you... What do you mean by that? I'm talking about the backdrop against which this was all... Did you object? No. So why do you stand there and say there was no express objection, as if there was some sort of implicit objection? What I would like to speak to is... There was no objection? There was no objection. Okay, so the answer to the first part of Judge Hawkins' question is... We did not... That's right. We did not object at the March 2005 status conference. Okay. But this was... Did you hear the second half of Judge Hawkins' question? If he could repeat it, I would appreciate it. Not only did you not object, you made no effort to ask for reconsideration or to amend the order in any way. And if I amend, you said, show cause. Yes, show cause. Is this what you asked? Yes. We did not do that. But what we did do was, when we filed our witness list in September, we again stated our reservation of a right to update our witness list. So your answer to Judge Hawkins is yes, you did not object, and yes, you did not seek relief from the order. Yes to both parts of the question. At that point, no. But what I would like to... It sounds to me as though your office's position was, we don't have to object. The judge doesn't have the power. We reserve our right. We think we have a right. It's kind of a question of who gets to say. And you thought that since the judge doesn't get to say, you didn't have to object. You could just reserve this purported or claimed right. It was not just the government that thought that this could not happen. The district court himself understood that he did not have the power under Ninth Circuit case law to do that. At the December 2005 status conference, where this all came to a head, there was a discussion about this. What page? I'm looking at it. It is at the Defendant's Supplemental Excerpts of Record at page 262. Okay, and what is it that you see there? And there was a discussion that the defendants felt that they were objecting to the government's reservation of a right to supplement its witness list. And there was a colloquy. The defendants were specifically asking the judge, you know, make this certain. And the judge said, I do not have the power to do that under Ninth Circuit case law. He said, I have done that twice before. I have been appealed on that, and I have been reversed. He said, I would like to be able to do that, but I can't. And that is part of the backdrop against which all of this occurred. I'm sorry. Can you read exactly what the judge said? I'm having trouble finding that page. He said, Defendant's Supplemental Excerpts. I have excerpts of record. This is the. Isn't this the excerpts of record starting at page. Oh, I had it a moment ago. I think it's in the excerpts, isn't it, this December status conference? It's in there. 262? 262. Oh, I thought it was just page 66. Supplemental excerpts. This is the supplemental excerpts of records submitted by the defendants. Okay, there's a further supplemental excerpt. I'm sorry, I'm with you. On what page are you looking at? 262. Well, and the discussion actually starts prior to that. Okay, just tell me where, line or page? Well, all right, let's pick up at page 262. Okay, line. Line 14, and the predicate to that was the defense attorney saying we don't have a finalized witness. If you're going to say something, tell me where it is. All right. All right, then starting on page 261. Okay. Line 18. Okay, I'm with you. Or line 16. The one that says honor. Yeah. And, of course, it changes from time to time in any trial. And we would like to lock in those witnesses. This is one of the defense attorneys. We would like to lock in those witnesses so we can prepare effectively. And then if you turn over to page 262, where the court on page line 14 responds, the court says, I know. And, of course, I live with my own experience. But I have done exactly what you are asking me to do on two occasions. And when things pop up at the last minute, things that should have been produced, that were required by the court's order to be produced, and I said you can't use them, then up they go on an interlocutory appeal. And twice the Ninth Circuit has said the government doesn't have that obligation. I didn't think that spoke to what you were addressing. This seems to speak to what Judge Hawkins and several others of us have asked you, whether you move for leave to use another witness who wasn't on the list because something had come up during the interim. No. What I'm thinking is the judge a year before says witness lists and that's it. And then something comes up in the interim, you ask for leave. And if the judge is arbitrary about it, we reverse. If the judge is reasonably exercising discretion, we affirm. But you have to do what the judge says here, which is to come to the judge and say, hey, judge, here are some more witnesses. Here, let me give you an excuse as to why we won't put them on the list. And grant us leave to do it. Well, with all due respect, Judge. But you didn't do that. We did not do that, no. But we made a judgment that it was a better and more efficient from an administrative point of view to take an appeal at this point rather than to put the judge to the test and see, all right, if we can. And in hindsight, has that turned out to be a really good idea, given that we're two years later? How many times now? When's the trial date expected? Well, now there is no trial date that's set. Are you saying you decided to ask us instead of asking him because you thought you had a better shot? How do you ask us until you ask him and he makes a decision? When at the December status conference, that December status conference took place without the benefit of the defendant having to file a brief addressing the issues that were going to be presented at that status conference. And Judge Malloy recognized that we had not yet had a chance to file a brief. But he went ahead and he held this status conference, and based upon this status conference, we were under the impression that the judge recognized he could not order us to file a final witness list where we could not supplement it later on down the road. It sounds like what he's saying here in this part of the record you directed us to is, look, if you show up with a witness at the last minute and I just arbitrarily say you can't use the witness, I'm going to get overturned on appeal. So I can't be that absolute about it. I mean, that's how I'm reading lines 14 through 25 here. We took an appeal at this point because we thought it was better from an administrative point of view, from being concerned about the judicial process to trying to get resolution of this at this point rather than What were you so concerned about? You go in there early on in May, you're talking about 60 to 80 witnesses. Then you show up in September, you've got 233 witnesses. Now, before you go in and get an indictment, don't you have your case organized? Don't you have your evidence? Do you just go in and indict and then start discovery? Is that what you do? No, Your Honor. Why would you need 233 witnesses? Tying up one whole courtroom for maybe a year and a half. We said in our March 2005 pretrial statement that we anticipated calling 60 to 80 witnesses. That is still our judgment. When this case goes to trial, we will only call 60 to 80 witnesses. But the defendant needs to know, I would think, what witnesses you intend to call. I would think you'd know who they were. And you'd have a good idea who they were before you went in there and got an indictment. This case will involve... One of the allegations here is that Grace, through its actions, knowingly endangered citizens in the community of Libby, Montana and its employees. Part of our evidence is to get medical evidence from individuals to show these individuals have been harmed, this is how they've been harmed, this is how Grace knew about it. Let's suppose you're investigating this thing. There were hundreds of those cases in the state of Montana. I know I handled probably over 100 of them myself. That evidence was all out there. You wanted to know who they were? You know who the ones who were ill or who died, whose wives got ill and died? It's not like you're starting out from scratch. Part of this is that the potential list of witnesses is constantly changing. Because some people who were not sick at the time... This asbestosis disease takes a long time to develop and manifest itself. And some people who were not sick at the time we brought the indictment subsequently became sick. So how long are you going to wait? On that rationale, you could go on forever delaying the trial on the basis that somebody is going to die and somebody else is going to get sick. And you'll never have a final witness list. We have never been the ones really to ask for a delay of the trial. That's something I want to ask you about. Because, as you know, I was on the original panel. And at the time, I questioned whether we had jurisdiction over this appeal under 3731. And you're Mr. Mercer, right? No, I'm James Kilbourn from the Department of Justice. Well, Mr. Mercer, who is a U.S. attorney, certified back in March 2006, certified that this appeal wasn't taken for purpose of delay and that the evidence excluded by the district court's order described in the said notice of appeal is substantial proof of a fact material in the proceeding ongoing before the district court. And I've been living with this case since then, as you have probably. And now I have two further questions. One is, I don't know if I can believe this certification. What credibility does this certification have that it wasn't taken for purpose of delay when all it's done is succeeded in delaying this trial for two years? And secondly, as I recall, when Mr. Mercer certified that the evidence that needed to come in was substantial proof of a fact material, he was talking about reports that weren't even in existence at the time. So I don't know how he could have possibly certified that. So if one of the reasons we've taken this en banc is to see what kind of meat hangs on the bones of 3731, I'm wondering whether we really should let the government get away with a certification like this as to evidence that doesn't exist, witnesses you don't know who they are, and an appeal that's taken now over two years. The government would like to see this case go to trial as quickly as possible. We have not taken this appeal for purposes of delay. Have you moved for a trial date? Not while the appeals are pending, no, Your Honor. It didn't seem to make sense to do that until the appeals were resolved. There were two separate appeals. But you did have a trial date. Didn't Judge Malloy give you a trial date? Judge Malloy set a trial date. There was some initial debate as to what that should be, and it ended up being September 2006. The trial date was not moved after we filed the appeal in this case, which was the first filed appeal. The trial date stuck. It was only when Judge Malloy entered a second series of orders that went to what some of the more substantive allegations would be and what the government would have to prove under the Clean Air Act that we filed an interlocutory appeal from that decision. And then as a consequence of that, Judge Malloy vacated the trial date. Can I ask a question? You started out by talking about Hicks, and, of course, we relied in the panel opinion on Hicks. And as Judge Kleinfeld suggested, being an embanked court, we're not bound by Hicks. So the question then is whether Judge Malloy really did have authority, whether the authority was with regard to his March 5th order or the December order, where he essentially allowed you to play catch-up and say, you can use all the witnesses you've disclosed to this date. He then went on and modified that in February and said, if you come up with new witnesses, you can use them by way of rebuttal. Now, I have two questions. One, what do you think Judge Malloy, taking Hicks off the table, what is his authority to order the government to produce a final list of witnesses before trial? And is there any other circuit in the United States since you come from the, what, the Criminal Appellate Division? Actually, I'm part of the Environment Appellate Division. Okay, but you have maybe perhaps a more national perspective than someone who's litigating entirely in Montana or the Ninth Circuit. Are there any other circuits that restrict a district court's authority to require disclosures of witnesses pretrial? There may be some authority for that proposition in the Sixth Circuit. I'm not positive how certain that is. One of the briefs, I will say, most of the cases that both sides have cited to the court hold contrary to Hicks and hold that there is some inherent authority. In one of those cases, one from the Second Circuit, that's cited in the briefs called Canoni, they, in footnote two of that opinion, they cite to a Sixth Circuit case which they say the Sixth Circuit implies, doesn't hold, but implies that there is no inherent authority in a district court. Aside from that, every other circuit that we've found, and is indicated in the briefs that has addressed this issue, has held district courts have inherent authority.  Because in our judgment, Your Honors, it's wrong. And the reason that is wrong is that this issue should be viewed against the backdrop, the historical backdrop of the development of Rule 16. And as the Advisory Committee notes to Rule 16, make clear that if you go back to the original state of affairs when the federal rules were first enacted in 1946, the prevailing view... Why not go back to Blackstone? I mean, why stop at 46? Well, that's when the federal rules were first enacted, and the prevailing view of the law... So what? Why is that the point we look at? I mean, we're dealing with the current rules, right? Why not go back to the common law? Why not go back to the common combat? May I ask a question about the structure of Rule 16? In Rule 16d-1, there's kind of a catch-all that allows the court at any time for good cause to deny, restrict, defer discovery, and grant other appropriate relief. And I wonder why that isn't a grant of sufficient authority, apart from the discussions of inherent authority that you've criticized in the Second and the Sixth Circuit.  If it is not specifically governed by the rules, I think this provision would be inapplicable. Counsel, I don't understand how you read the rule. When I look at subsection G on expert witnesses, it says that the government must disclose the identities of expert witnesses it's going to use in its case-in-chief. Now, if that stood alone, arguably there'd be a negative pregnant, that it need not disclose the names of other witnesses. But then the very next piece of the rule, subsection 2, lists information not subject to disclosure, and basically it's the material that 18 U.S.C. 3500, the Jencks Act, says is not subject. So a negative pregnant from 2 is just as persuasive as a negative pregnant from G. There just seems to be a gap in between them. Then when I look at the advisory committee notes, the way I read them is the advisory committee has a whole lot of stuff about how, it turns out the witnesses don't get murdered or intimidated after all when witness lists are exchanged, no problem. Some congressmen thought, no, it's a real problem. We don't think there ought to be exchange of witness lists. Whoever had enough clout to get the good stuff for the prosecutors into the legislative history did not have enough clout to get it into the rule, and the rule just leaves a gap. And it seems like the reasonable way to fill the gap is just to use this other appropriate relief language that Judge Graper pointed out in D-1. Well, it wasn't just prosecutors who were concerned about having to disclose witness names. It was also defense attorneys. But there's a difference there, see, and that was what probably had in mind in that Hicks case because in the Hicks case it was the defendant who was objecting. Am I right about that, to the disclosure? Yes. And, you know, part of the thought that ran through that was that you forced the defendant to disclose his hand before trial. That that, you know, kind of indirectly impinges on self-discrimination and all the rest of it. I don't think you can treat disclosure by defense the same as you treat disclosure by the government. The government's duty is to make all that evidence available. It's even a different subsection of the rule. It's not symmetrical. The language of the Hicks opinion speaks in equal terms. You're correct. I know that, but I'm telling you that that was a mistake. Judge Goodwin has often said, I might have been asleep in a caboose at the time, see. Can I just ask you a practical question? Yes. Do you think there's anything, let's assume you have an as yet undivined witness because you apparently are going to continue the investigation through trial according to the representation made in the trial court. Let's assume you come up with a witness. And it's a blockbuster witness. And for whatever reason, you need it to prove some essential element of your case that even though you said you were ready to go to trial in September 2005, you still need. Do you think there's anything that precludes you from asking the judge to exercise his discretion at that point to let you bring in some specific defined witness for a specific point? I think we could try. I'm not sure what Judge Malloy's answer would be. So why don't you do that when you have something concrete, and then if he abuses his discretion, if you fail and he abuses his discretion, which he may or may not, then we would have something to talk about, wouldn't we? Well, I think there are things to talk about now. And the Fifth Circuit has actually held the government. In a Fifth Circuit case, the government did take an appeal quite similar to this where there was a discovery order that had required a witness list and said, if it doesn't show up, then you can't appeal. And there was a question raised up, was that sufficient to justify, to warrant an appeal under Section 3731? And the Fifth Circuit said, yes, that was sufficient to take an appeal. Now, what I would like to say about the Rule 16 is that where we are coming from is in looking at the legislative history of the enactment of that rule. And I think it's critical to look at the debate that went on between the House and the Senate, and there are two different versions of the bills and how they would address this. The House would have made witness lists discoverable three days in advance of trial. The Senate objected to that and deleted that provision from their bill. And when they went to conference, the conference committee said, we choose the Senate version of the bill. And not only did they say, we choose the Senate version, they characterized what the Senate version of the bill did. And that, in the conference committee's words, they said, the Senate made witness lists non-discoverable. They didn't say, it didn't have anything to do with whether the defendant could ask for a list. It's too bad you didn't have enough clout to get the notation in the report into subsection 2, information not subject to disclosure. Yeah, I mean, you're taking a statement, an ambiguous statement, a provision that didn't pass, and you want to raise the level of legislation. And, you know, this is an argument that only somebody from Washington would love. I have a quick question here. This is a little bit on the practical side. You go at great length in your brief talking about how the judge improperly applied sanctions. Why is it a sanction to give effect to a finalized witness list? The sanction was, the court said, no witness not appearing on this list, he's not going to let them appear. But that's giving effect to the witness list, isn't it? In the case in chief. In the case in chief, yes. That's simply carrying out the previous order. Well, that's been characterized as a sanction, and in fact, as I said, in this Fifth Circuit case, the Fifth Circuit said that constitutes an exclusion of evidence for purposes of taking a 3731 appeal. And the Fifth Circuit has considered the very same scenario here. And they characterized it as a sanction? I can't remember precisely how they characterized it as an exclusion of evidence. Well, yeah, but I'm asking whether it's a sanction, because you make a lot of time talking about sanctions. 3731 speaks in terms of where the evidence, where the district court has suppressed or excluded evidence. So that was the test. What's the name of the Fifth Circuit case? I'll have to. You can give it on. I'll give it on. If I get rebuttal, I'm over time, I believe. You are well over your time. Thank you. Thank you. Thank you. If you may please the court, I'm Chris Landau, and I'm here today on behalf of all the defendants. How are you, Mr. Landau? How are you, Chief Judge Kaczynski? Nice to see you. Anything you heard here today that you don't think is adequately covered in your brief? I'm somebody from Washington, so I guess you'll have to filter whatever I say through that lens. I have a question, if I may. If that's an invitation to sit down, I normally. I have a question. Please. I'd like you to address our previous fairly old en banc case of Loud Hawk and its interpretation of 18 U.S. Code Section 3731. We, in that case, required something more than a certification. We required, as I think Judge Wardlaw's earlier question was, meat on the bones. That seems to go contrary to holdings of several other circuits, including the third, the seventh, and the eighth. And, in fact, I'm not aware of any other circuit that has interpreted the statute the way we did in Loud Hawk. Why should we adhere to the Loud Hawk framework? Why shouldn't we go with the other circuits that have rejected that approach? Two points, Your Honor. First, I'm not sure it's accurate. Maybe this is a semantic thing to say that this circuit has required something more than a certification. I think what's perhaps a more accurate way of putting it is that the naked certification itself will not be, if so facto, conclusive. Well, we've required clothing, however you want to put it. Fair enough. Right. But we are not in the same boat as the other circuits. They have required much less, based on the legislative history, the wording of the legislation, hints in Supreme Court cases and various other reasons. Right. They have rejected our approach. Why shouldn't we overturn our old approach and adopt the common? None of those circuits, Your Honor, has considered the argument that the Supreme Court found persuasive in the Gutierrez-de-Martinez case, which is that a certification requirement does not, in and of itself, should not be interpreted to preclude judicial review. There's a long line of cases that courts don't typically interpret statutes to preclude judicial review. And that's a very similar case. There was an attorney general certification in that case. And the specific issue that the Supreme Court was deciding was whether or not the attorney general certification that something was met was subject to judicial review. And the court relied very heavily in that case on that presumption. So I think that is just an argument that was not considered by the other ones, by the other circuits, in deciding this. They just took an approach to say, look, the statute doesn't explicitly provide for judicial review, so we won't give it. What we would respectfully submit is that kind of looks at things backwards, because typically, if Congress wants to preclude judicial review, you expect that to be expressed in the statute. So I think, with all respect to the other circuits, they're looking at that a little bit through the wrong lens. I would also add, Judge Graber, that there's no indication that this court's jurisprudence, since Loud Hawk, has proven unworkable or unwise or unwise. Well, we're not in the business of deciding what's unwise if it's an incorrect interpretation of the statute. I mean, I view my job is to decide what did Congress have in mind with this statute? What were they trying to tell us? And it seemed to me that they were saying that review of the underlying case should be freely available. Not judicial review of the certification, but judicial review of the thing the certification is about. And if you look at it through that lens, the certification is really a bare-bones jurisdictional requirement to get the meat of the case to this court. Well, Your Honor, again, I think that the statute doesn't seem to me to speak either way. I don't think it says you may have certification. I don't think it says you may not have certification. I think, with all respect, this is one of those situations where you kind of fall back on default rules. And I would suggest that the default rule that the Supreme Court adopted in the Gutierrez de Martinez case, which is, again, a certification requirement, is appropriate. And I would say one other point in response to your question, Judge Graber, that I think this case is a terrific example of why it makes sense to have the meat on the bones, to go back to Judge Wardlaw's language, in the sense that we would be completely stumbling in the dark here today in determining whether it was an abuse of discretion if we had no idea what evidence was even at issue. Well, in a funny way, it's the perfect case because the panel went through all of it, and even under our previous jurisprudence, found that we had jurisdiction. So it turns out, in a funny way, not to matter whether certification – I mean, I suppose that's one way to look at it, that it doesn't – in this case, it doesn't matter. The panel's view, using Loud Hawk or a different view of certification, gets you to the same place. But, of course, that's only because this became an issue before the panel. If this Court were to rule today, were to overrule Loud Hawk on this score, and to say the bare-bones certification that the government provided here is sufficient, all you have to do is parrot the statutory language saying this is not taken for purpose of delay and it's a substantial – it's a material proof of a substantial fact, or whatever the statutory language is. If you look at the certification, that's all that was said here. Does Loud Hawk require proof of anything that's not in the statute? No, Your Honor. Loud Hawk simply says – that's why it's not the additional point. There's nothing additional beyond what's in the statute. It simply says, okay, the Attorney General or the U.S. Attorney certifies, but the certification isn't the end of the story, that it's subject to judicial review. So we can – this Court can assure itself that when the government says that it's not taken for purpose of delay and it's material, that at least it gives that some level of scrutiny. What is that level? What is that level of judicial scrutiny? Do we look at the claims de novo, or do we look at abuse of discretion? How can we order depositions to be taken to see if the United States Attorney really had some basis for certification? That's not the way the statute reads. Your Honor, I think it – Counsel, just to refresh my memory, and I think there was another wrinkle. Didn't we allow the government, after it submitted the bare bones thing, didn't we allow it to identify the witnesses and tell us what reports? And then we found there was jurisdiction. Precisely, Your Honor. And so what I was going to say earlier was that if this Court were to overrule Loud Hawk and to say that the bare bones is okay, then today, or in the future case of this sort, we would have no idea what evidence we were talking about because the only reason that this – Well, I'm not sure why is that. The only question is at what point in the process does the government have to trot out the materiality? If it gets – 3731 gives us interlocutory appellate jurisdiction, but they still have to get to the appellate question that's been presented, and the appellate question would have presumably asked whether or not these witnesses that had been excluded were properly excluded, which would have raised the issue that we're confronting today, and then the issue of materiality would have been there, and then there would have had to be an issue as to whether or not they were material. Fair enough, Judge Fischer, and I think this goes back to Judge Wardlaw's point as well, that the government has the entire blue brief that never identifies what witnesses are issued. I know that's what they said, but still that was the issue as to whether or not there was an appellate jurisdiction. I understood, but, I mean, even in the merits of the blue brief, you can look in vain for what this is about. I mean, that's why there's – That's their peril, though. It doesn't have to do with the statute. I mean, we may have jurisdiction, but this or another may or may not be – The criteria. They may lose. I mean, that's at your peril to decide what to disclose, correct? The problem that this created, at least for appellate review, was that we have a certification that's talking about the evidence excluded by the district court's order, and in the blue brief it didn't say what the evidence excluded by the district court's order, if any, and as it turned out, some of it didn't exist. The reports that they claimed were excluded by the district court's order had not been produced. I mean, had not been made. So there was no evidence. So, I mean, I don't know how to deal with that problem, but when we finally got to the bottom of it, there was no evidence. Correct, Your Honor. And, in fact, what happened was that we raise in our red brief this jurisdictional issue, then in their reply brief before the panel, they, for the first time, raised some witnesses and some documentary evidence, then, Your Honors, before the panel, ordered a supplemental round of briefing when the district court dismissed part of the indictment on statute of limitations grounds, and they identified different – there was some overlap, but it seemed to be a work in progress, which gives rise to, I think, the point that Your Honor was raising earlier. It starts to raise questions about did the U.S. attorney consider this before this was certified, which is, of course, the whole point of the statute, to put a brake on the U.S. attorney. Counsel, well, that's an interesting view of the statute, but are you familiar with Osborne v. Haley, 2007? Yes, Your Honor. That's the recent remand case. Right. And in that case, the attorney general's certification in a different context was deemed to be conclusive, but the statutory wording was really parallel to the statutory wording here. Well, with all respect, that is precisely the same statute as in the Gutierrez v. Martinez case that I mentioned a few moments ago under the Westfall Act. And what that case said is in a case which the Supreme Court said in the Gutierrez case was subject to judicial review. The Osborne case from earlier this year is about remands and what happens, reviewability of remand orders which typically are not reviewable under those circumstances. I'm curious about your view of this as a break because the history of the statute is that it was intended to be liberally construed to effectuate its purpose of permitting the government to appeal from all suppressions and exclusions of evidence in criminal proceedings except in circumstances that don't apply in this case. So it seems like the statute is proceeding from the opposite end of your argument. Well, Your Honor, again, if you look at the statute, it has different subsections. There's a section about appeals from orders dismissing indictments. And there it goes to the full extent that's constitutionally permissible. That's the first subsection of the statute. When you go to the next subsection, which is what we're under here, it's about the suppression of evidence. And there it says it has to be certified. In other words, so the certification requirement was meant to be some sort of a break, obviously, because it's what distinguishes appeals from evidentiary suppression orders. Counsel, I had read this a little differently from you, and I'd like you to educate me out of it if you can. When I look at the text, it says, if the United States certifies to the district court, it doesn't say if the district court finds or if the circuit court finds, and Congress often uses that sort of language, for example, in certificates of appealability, in habeas cases, second habeas, doesn't say that. So I read it literally to say all it takes is a certification. Then I look at the practicalities of it. Well, on the one hand, the certification could be a lie. It could be that the U.S. attorney just isn't prepared to go forward and wants some delay, or some witness is shaky or they can't find a witness, so they want a delay. And there's no way of testing whether it's a lie. On the other hand, if you leave in this jurisdictional issue where we have to make a decision, first of all, about whether the certification is justified, the appeal is likely to be delayed. There are two stages of the appeal. There may be some ancillary proceedings, such as Judge Vea discussed, that make it a much more complicated and time-consuming business. It's more efficient to just get to the merits, tell the district court whether it can suppress the evidence or not. So I'm wondering what function it can perform. And I guess one function would be so that the Justice Department can supervise U.S. attorneys' offices and tell them which cases they can take the risk of asking a circuit court for an opinion about and which ones they can't. Does the statute say the Justice Department? It's the U.S. attorney, Your Honor. Yes. Do we know from this record whether that requires the approval of the Department of Justice? No, Your Honor. I'm not aware of anything in the record. I know that the certification is signed by Mr. Mercer, who is the U.S. attorney for Montana. They don't need Justice Department approval to appeal to a circuit court? Not to my knowledge. There's certainly nothing on the face of the statute that does that. He was wearing two hats at the time, wasn't he? Excuse me? He was wearing two hats at the time. I believe that's correct, Your Honor. I think he was the associate attorney general as well. Associate, right? Yes, I believe. Would he sign it as associate or would he sign it as assistant? I've got it right here. Or just bill? I think it signed United States attorney. I mean, there's another issue. The statute itself doesn't require Justice Department approval. It may be, as we know from receiving many requests from the Justice Department, that they need certain authority to file appeals in the U.S. courts of appeal. I believe the solicitor general has to approve those things internally. But that's a part. The statute doesn't say that. No, Your Honor. It's the U.S. attorney. Correct. And we have other statutes like this where the U.S. attorney certification is required in certain juvenile and other things. Some of them say attorney general. Some say the U.S. attorney, meaning not an assistant. And I think that's it. And there's always questions about, well, what about an acting U.S. attorney? Yes. But we don't have any of those problems here in that we know that the U.S. attorney, Mr. Mercer, was actually the U.S. attorney at the time, correct? That's correct, Your Honor. May I ask you another question? Are you, in light of everything that's been filed now to back up the certification, are you still maintaining your position before this en banc panel that we don't have jurisdiction? Your Honor, what we are maintaining is that you do not have jurisdiction because you should not excuse the failure of the United States to follow the procedures that were set forth by this court in loud talk and subsequent cases. In other words, that you're supposed to get this done up front. But we have Gantt. We excuse him in Gantt. As a matter of prudence, again, I think you can excuse the failure. And so jurisdiction is one of those tricky words of many colors. The failure or defective certification is not a jurisdictional flaw in the classic sense that this court is powerless to act. The court has expressed in the Gantt case and in the Eccles case as well that and I think the circuits are unanimous on this. Because sometimes U.S. attorneys just forget to file this thing. And I think there are certainly cases in which courts have refused to give the U.S. attorney the benefit of the doubt. And there's cases in which they've given them the benefit of the doubt. You'd have to concede that what the panel did in the response by the government cured any notion about the bare bones nature of the certification, wouldn't you? Well, Your Honor, frankly, we think that there are some problems with some of the categories of evidence. If you look at the specific people that they cited, again, it's been a little bit of a moving target. Some of them, for instance, are I guess my question is whether you want us to get to the merits. You know, Your Honor, I frankly think that at this point, certainly, I would like to get to the merits in this argument. And I think That begs the question that Judge Hawkins is asking. I assume that he means that do you want the court in its decision to get to the merits of the case? Your Honor, we think this is a very important decision on the merits here, that the panel's decision following circuit precedent at the time. You want to win, right? You know, that certainly You want to win, and I guess the question is if you're going to win, if you're going to win, would you rather win on the merits or the jurisdiction points? Well, on the merits, Your Honor. Let's say you win on jurisdiction 3731. Wouldn't it be without prejudice so the government could just bring the same appeal against Once they have their ducks in a row? You know, that's Look, we felt, Your Honor, that we owed it to the court to point out the jurisdictional flaw. Certainly, you know, the fact that we've eaten up so much I mean, the court obviously has an obligation to certify it to assure itself its own jurisdiction. I think there's no question that the 800-pound gorilla in this case is the question of a district court's ability in a large criminal case. I won't tell Judge Maloy you said that. No. Well, you know, on that score, I think, if I could proceed to the merits, there are two levels of inquiry on the merits. The first, and I think the court got into this somewhat with counsel for the government. The first is, is Rule 16 exclusive in the sense that the district court has Or put it this way. Does the district court have authority, have power under any circumstances to order pretrial disclosure of witnesses? And we think that the answer to that is yes. The second question then is, did the district court abuse its discretion here? I mean, do you get to the discretionary inquiry? The panel felt that it was bound by Hicks, that it couldn't get to that second stage of the inquiry, and we respectfully submit that Hicks, on which the panel relied, really overread the post-enactment legislative history of which the government spoke. I mean, I think in a nutshell, there was a proposal to require pretrial disclosure as a matter of course in every single case, and that was what the advisory committee had recommended, and Congress was concerned about that. They said, no, this is, you know, there's issues of witness intimidation, and so they didn't allow that. But the question then, that begs the question, what if you reject a proposal that would require it in every case, are you implicitly saying that it's prohibited in every case? And that is a logical non sequitur. I mean, I think the reason that people might not have wanted it in every case is that the panel, that courts have discretion to allow it in particular circumstances, and that's really where we are here. So with respect, I think that the big issue in this case is, what is a district court's power when faced with a massive criminal trial that is threatening to spin out of control when a lot of witnesses are being added, and, you know, we're hearing today that the government may not want to call all 233 witnesses. Mr. Landau, this is an asbestos case. Yes, Your Honor. The latency period for asbestos can be, for mesothelioma, can be anywhere from 25 to 40 years. Now, suppose that after a trial date is set and a finalized list comes in, the U.S. learns about an individual who has contracted mesothelioma. Sure. Are they going to be barred from producing that person as a person who was injured? No, Your Honor, not necessarily, because I think you have to read the court's orders reasonably and against the backdrop of the local rules. I mean, the district court doesn't have to reincorporate the local rules into each and every order that the district court writes, and I think Local Rule 7.3 of the District of Montana provides a mechanism for a party to go to a court and say, okay, this is something we could not reasonably have contemplated. Here's a person, here's, you know, there were some references earlier to the blockbuster witness. If, you know, the mystery witness is going to blow the case open, comes up, the U.S. could go to the judge and say, okay, this person was not reasonably available to us at the time you entered your order, and so please let this person in. What we have here is the opposite situation, where every witness that they've identified in the filings that they needed to do on this jurisdictional issue is somebody that they could have had already. They're attorneys who entered into settlements of lawsuits years ago. In other words, there is no kind of mystery witness in Scarlet that they've come up with. Counsel, this is a criminal indictment. I don't know how many counts are left in it, but really what the government has to prove is some sort of knowledge and or intent agreement in the conspiracy charges. And how many, I mean, the blockbuster witness in this case would be, here's how I know that they knew what they were doing and that they were intentionally exposing these people to asbestos-causing materials. The blockbuster witness is not going to be someone who contracts asbestos 20 years from now. That person is remotely likely to have anything to say about the elements of the crime as alleged in the indictment. Well, I agree 100%, and certainly their witness list of 233 people already had ample support to prove that. I'm not sure how material. Well, I can imagine somebody new along the lines Judge Wardlaw is suggesting, somebody that just retired or got fired and was at a high level of the company and decides to go and testify for the government, they knew it all the time. Absolutely, Your Honor. I think that is certainly hypothetically possible. Would it be within the discretion of the district judge to let that witness testify, even though the government had not put him on the list? I think that's within the discretion of the district judge. I think they would have to explain to the district judge why they couldn't have come up with that person reasonably, and presumably defendants would have a chance to come in and say why they think otherwise. It actually goes beyond that. The district court could even admit witnesses that could have been identified earlier. It certainly... The district judge, and everybody on my left here, including Anne on my right here, has been a district judge at Trout at one point, and you were at Trout. No. It's okay. Keep on with the question. Trout judges have lots of discretion, and Judge Malloy may well have been very strict when he issued his order, but when faced with a situation where the witness seems very important to one party, he may say, well, okay, I'm making an exception. I'm changing my mind. That's within his discretion. Absolutely. Whether the witness was available earlier or not. Right. He's less likely to do it if the witness was available earlier. Right. But I think the government kind of creates a parade of horrible scenario of, well, gee, this order must be reversed because imagine we could come up with this blockbuster witness. Well, that's just not what they have... It seemed like the government, when I asked them the practical question, that basically you're in agreement because everybody knows what the local rules are. People know what the custom and practice is if you practice in federal court, which is, of course, if you have such a situation, you make one last request, and you might even get a motion for reconsideration if it's denied, and the government basically said that. Whether or not they'll prevail, we don't know yet, but it sounds like you're both in agreement on that point, that the book isn't closed, so to speak, on the witnesses by virtue of the order, but it is closed in terms of being an open sesame and a moving target, so to speak. I think that's absolutely right, Judge McHugh, and I think that Judge Malloy wanted to create a structure, and again, I think what is so important in this case and what is really, I think, very useful is to go and look at the transcript of the March 9th conference. The government issued the indictment on February, I believe it was, 7th of 2005. The judge called everybody into his chambers, the first 40 pages of the transcripts, everybody getting up and introducing themselves, counsel for the government, for the various defendants, and then the judge says, okay, this is the same judge who handled the CIRCLA matter, which was a very complicated matter as well. He's very familiar with the whole situation in Libby. He lives in Montana, but he's a judge who's very conscientious about the rights of criminal defendants, and he understood this was going to be a complicated case, and he called everybody in and said, look, I think this is going to be a complicated case. My instinct was to set this for trial in May of 06. At this point, he was thinking May 06, and then he actually, it's more than that the government didn't object to this deadline. In a sense, we're talking here about the December order that's being appealed, but really, the die was cast back in the March 15th order, and frankly, the die for that was cast at this March 9th hearing, because the district court asked the government, and there was some discussion earlier, did they object? Not only did they not object to these pretrial disclosure deadlines, the Assistant U.S. Attorney said that would be good. He actually says, I have a calendar here. Okay, you can make your disclosures, your expert disclosures by the end of September. Yes, sir. What date? Out of the calendar. September 30th? That would be good. Again, I think this is a point Judge Kleinfeld might have mentioned, whether or not the government can agree to an ultra-virus thing under their thing. Sure, litigants, every day, if you agree to something, unless it's a jurisdictional thing, you're basically stuck with what you've agreed to. The government agreed to these pretrial disclosures, and so that's at SCR 64, and again, that's ratified again at SCR 70. And all the discovery, the whole train proceeded under the framework that was established in the March 15th order, which itself came off of this March 9th conference, where the judge brought people in. And what happened is, the government comes up and says, well, this was a year in advance. Well, of course, they agreed to it. And the reason it was, the judge just didn't pick this date a year in advance for the heck of it. I mean, the judge realized, this is going to require lots of motions. I mean, there were 45 motions in limine, filed off of this stuff. And the government again. You don't have to use every second, you know. Absolutely. If there's one other point I could make, I think it's a point that Judge Smith made earlier. But don't use it out of sight. Which I think is a really important point that, on which I think the panel also, in following some language and circuit precedent, we'd respectfully suggest. Be careful what you say. No, I hear you, Judge Fischer. I guess the point is that there is some language that refers to these kind of things as sanctions. And I think this kind of goes to the premise of the question, which is, it's a very odd, sanctions suggests punishment. And that's why when you think punishment, you think, well, you have to have bad mens rea and that kind of stuff. When you just have an order that says, look, you've got to produce something by a particular day. The government says, you can't sanction us because there weren't findings of bad intent. But their intent could have been purist-driven snow. It shouldn't matter. If you blow a deadline and there's this complicated, carefully articulated schedule that is all set in place for this trial date, and you don't produce your people, your witnesses, before that date. We respectfully submit that the cases that refer to this as sanctions, that that is a poor use of language. That, in fact, it's kind of like the difference between criminal contempt and civil contempt. The purpose is not punitive. The purpose is just really getting the trains running on time in litigation. And again, so I think it's mistaken to look at this through the paradigm of sanctions. The one other thing I'd say about those cases on which the panel also relied, is that those cases like Peters, Finley, Verdusco, those are cases involving defendants' witnesses. And when a court is excluding a defendant's witnesses, that certainly raises constitutional issues that are not implicated when it's the government's witnesses. So I guess with that, I will take up Judge Kaczynski on his suggestion that I don't need to use up every second of my time if there's no further questions. Thank you. Thank you. You've used up more than your time. I will give you the non-rebuttal rebuttal. You may stand there for ten seconds and see if you've got a question. If you do, you can field it. If not, the case will be submitted. I have a question. Does the Solicitor General have to approve interlocutory appeals? Yes, there is a regulation. The Seventh Circuit so stated in its opinion. There is a regulation in Title 28 of CSO that requires Solicitor General authorization for every appeal that the United States commission. I think it was the Third Circuit, I think, also in addressing the certification issue imposed a circuit rule to make explicit that the certification has to be filed within 30 days along with the notice of appeal. If we were to go your way on certification, would it be appropriate to include an explicit 30-day rule since the certification statute itself doesn't apply one? I would think it would be more appropriate to do that through adoption of a local rule as opposed to in an opinion. But I assume that that would sign it. But the reason I'm asking is because a lot of times we get motions for extension because you have to go to the SG's office, but you have to file your notice of appeal within a certain time, and the certification presumably is tied to the same thing. Was there an internal problem with the U.S. Attorney's Office in Montana that you had people there that weren't doing their job properly or weren't reporting to Washington? No. Thank you. KJSRU will stand submitted. So why are you there today and why aren't they here? We are jointly handling this case with the U.S. Attorney's Office. We're part of the trial. All rise.
judges: Kozinski , Pregerson , Reinhardt, Kleinfeld , Hawkins , Graber , McKeown , Wardlaw , Fisher , Bea , M. Smith